UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SALLY RAMIREZ,

                    Plaintiff,

           -against-

CITY OF NEW YORK, S. DEVI JEWRAM, and
JOHN and JANE DOE (said names being fictitious,
the persons intended being those who aided and
abetted the unlawful conduct of the named
Defendants),

                    Defendants.

-------------------------------------------------------------X

**COMPLAINT**

Docket No.:

**JURY TRIAL
REQUESTED**

       Plaintiff, **SALLY RAMIREZ** ("Plaintiff" or "Ramirez"), by her attorneys, **MADUEGBUNA COOPER LLP**, for his complaint alleges:

## I.    THE NATURE OF THIS ACTION

      1.    This is an action for injunctive relief, declaratory judgment and money damages to remedy discrimination on the basis of race, color, national origin and age in the terms, conditions and privileges of employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.* ("Title VII"); 42 U.S.C. § 1981(a) ("Section 1981") and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); New York State Human Rights Law as contained in New York State Executive Law, § 296, *et seq.* ("NYSHRL") and New York City Human Rights Law as contained in the Administrative Code of the City of New York, § 8-107, *et seq.* ("NYCHRL").

      2.    Ramirez contends that the terms, conditions, and privileges of her employment relationship with the CITY OF NEW YORK (the "City") and its agency, the Human Resources

Administration/Department of Social Services ("HRA") were adversely affected because of her race, color, national origin and age.

3.      Specifically, Ramirez, a long-standing City employee of more than 30 years, presently a Director, Administrative Staff Analyst, Level M-2 in HRA's Finance Department and a 60-year-old Guyanese woman of Indian descent, was passed over for promotion to a position which was not even posted for City employees to apply in favor of younger white male.

4.      Although the defendants attempted to hide the posting in order to secretly push through a candidate of their choice, a vastly less experienced, younger white male, Ramirez still found the posting and applied right away. Yet, she was not even given an interview, proving that all along the process was a sham designed to promote the younger white male.

5.      Accordingly, this action is being brought to vindicate Plaintiff's human and civil rights under the law.

**II.      JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      This Court has supplemental jurisdiction over the state causes of action pleaded.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

**III.     PROCEDURAL REQUIREMENTS**

9.      On February 24, 2023, charges of discrimination were filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII and the ADEA.

- 2 -

10.    The EEOC issued a Right to Sue Notice to Ramirez on November 15, 2023, which she received on November 15, 2023.

11.    This lawsuit is commenced within 90 days of Ramirez receiving the Right to Sue Notice.

12.    After commencing this action, Ramirez will serve a copy of the complaint upon the New York City Commission of Human Rights and the Corporation Counsel of the City of New York, in accordance with New York City Administrative Code Section 8-502(c).

**IV.    PARTIES**

13.    Ramirez is a 60-year-old Guyanese female of Indian descent.

14.    Ramirez is a resident of the City and State of New York, residing in Staten Island, New York.

15.    Defendant CITY is a municipal corporation existing under and by virtue of the laws of the State of New York.

16.    Until her promotion in June 2022, Defendant S. DEVI JEWRAM ("JEWRAM") was employed by HRA as the Assistant Deputy Commissioner of Finance/Office of Revenue Management and Development ("ORMD").

17.    JEWRAM currently serves as the Deputy Commissioner of Finance/ORMD.

18.    JEWRAM is a Guyanese female who, upon information and belief, is in her mid-50s.

19.    At all relevant times, JEWRAM was responsible for ensuring that employees were not subjected to discriminatory or retaliatory practices and directly supervised Ramirez from 2018 to June 2022.

20.    JEWRAM is sued in her personal capacity for monetary damages and in her official capacity for injunctive relief.

21.    At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the United States and the State of New York, and under the authority of their respective positions or offices.

22.    At all relevant times, JEWRAM had authority to assign duties and responsibilities to employees; supervised and controlled employee work schedules and conditions of employment; and possessed authority to promote, demote, assign responsibilities, and, if necessary, terminate employees.

**V.    FACTS COMMON TO ALL CAUSES OF ACTION**

*Ramirez's Background and Education*:

23.    Ramirez is a military veteran, having served in the United States Army from 1984 to 1988 and honorably discharged.

24.    Ramirez earned a Bachelor of Business Administration degree in Computer Information System from Baruch College in 1992.

25.    In 2014, Ramirez took graduate level courses in Human Resources Management and Leadership from Long Island University.

26.    In 2014, Ramirez also attended the Organizational Management and Leadership Academy at Hunter College.

*Ramirez's Extensive Skill, Qualification and Experience*:

27.    In 1989, Ramirez began working for the City of New York as a Principal Administrative Associate with Crisis Intervention Service and a year later transferred to the Food Stamp Program as an Associate Staff Analyst.

28.    In 1996, Ramirez transferred to the City's Administration for Children's Services ("ACS"), Management Analysis Unit, with a civil service title of Associate Staff Analyst and office title of Senior Program Analyst.

29.    As Senior Program Analyst, Ramirez participated in agency reform initiatives, developed expertise, and trained staff in ACS data warehousing and prepared monthly reports to submit to the ACS Commissioner.

30.    In 2005, Ramirez moved to become an Associate Staff Analyst in HRA's Finance Office.

31.    In 2006, Ramirez was promoted to the civil service title of Administrative Staff Analyst.

32.    As a result of the promotion, in 2006, Ramirez became Director, Managerial Level 2.

33.    In the Director position, Ramirez has been primarily responsible for developing, managing and automating revenue projects and providing analytical and technical research to internal departments and external agencies.

34.    As Director, Ramirez represents the Finance Office, as the Business Analyst Lead, in all interactions and is responsible for coordinating all training and user acceptance testing, amongst other responsibilities.

35.     In her written performance evaluation as Director, for the period January 1 to December 31, 2012, Ramirez received an overall rating of "exceptional".

36.     Indeed, in the five evaluations she received as Director, four of the five were rated "exceptional," and the fifth was rated "greatly exceeds expectations."

37.     At all relevant times, Ramirez has continued to perform exceptionally in her Director position, with no complaints about her work.

38.     In fact, until she was unlawfully passed over for promotion, when JEWRAM was out of the office, Ramirez was the Director who covered for her, and all Jewram's staff in HRA's Finance Office would report to Ramirez.

*Darshan Taylor is Hired by HRA:*

39.     In August 2013, Darshan Taylor ("Taylor"), a white male now in his late 30s/early 40s, joined HRA as an Associate Staff Analyst.

40.     At the time that Taylor arrived at HRA, his background of approximately twelve years consisted primarily of research and alternatives analysis for banks and business management consultants.

41.     At all relevant times, until her retirement in June 2022, Tabitha Brown ("Brown") was the Deputy Commissioner of Finance/Office of Revenue Management and Development.

42.     In 2015, Brown hired Taylor to be her assistant after Taylor's supervisor was promoted to a different department.

43.     In 2016, Brown promoted Taylor to a computer title while he was still on the civil service list.

44.    In 2017, Taylor was picked up off the civil service list by Brown and given the title of Director of the Bureau of Revenue Optimization and Automation.

*JEWRAM's History of Age-Related Comments (Background Evidence)*:

45.    From approximately 2018 to June 2022, when JEWRAM supervised Ramirez, JEWRAM made comments about older staff in HRA's Finance Office not retiring.

46.    JEWRAM's ageist comments and statements have been overheard by many employees, including Ramirez, given the open layout of the office.

47.    JEWRAM has also commented to Ramirez on several occasions that because she is in an age 57 retirement plan, Ramirez, who is in an age 62 plan, will still be at HRA after JEWRAM retires.

48.    As a result of JEWRAM's comments and her failure to provide upward mobility for Finance staff, she has frequently told Ramirez and Ramirez's staff since 2018 that if they were unhappy at HRA, then they should move on because there were no opportunities to progress.

49.    As a result, at least one Finance employee took an early retirement with penalties at age 59 and told staff, including JEWRAM, that there was a lack of opportunities in the unit for all employees.

*JEWRAM has made Discriminatory Comments on the Basis of Age and National Origin*:

50.    JEWRAM has been known to make outright discriminatory comments based on age and national origin.

51.     In early 2022, JEWRAM, who like Ramirez is of Guyanese national origin, told Ramirez that she would not return to Guyana after retiring, as she did not like the country or Guyanese people.

52.     JEWRAM has also made comments about being glad her son does not live with a Guyanese woman and told Ramirez that after speaking with a "smart" Guyanese doctor, that interaction might change her mind on her feelings towards Guyanese people.

53.     In the spring of 2022, Ramirez and JEWRAM interviewed candidates for a Computer Associate, Level 2 position, which was in Ramirez's unit.

54.     One of the candidates was Anthony Meijas ("Meijas"), who was an older worker.

55.     Following the interview, JEWRAM privately told Ramirez that Meijas is in retirement age, and might leave at any time.

56.     In contrast, Ramirez told JEWRAM that she intended to offer Meijas the position, as he had over thirty years of programming experience, and Ramirez had been struggling to fill the position with a qualified programmer for over two years.

57.     JEWRAM objected to Ramirez offering Meijas the position, telling Ramirez that "He's old, he's old."

58.     Ramirez reminded JEWRAM that such discriminatory comments were not only unlawful, but that the department could get into trouble for discriminating because of age.

59.     Despite JEWRAM's objection, unlawful and discriminatory comments and position, on June 27, 2022, Ramirez officially hired Mejias to the Computer Associate, Level 2 position.

*Ramirez Applies for the Assistant Deputy Commissioner of the Bureau of Revenue Development
and Automation Position:*

60.     In October 2022, Ramirez inadvertently located a posting for the Assistant Deputy
Commissioner of the Bureau of Revenue Development and Automation position (the "ADC
position") in HRA's Citywide personnel system, which she had no knowledge would be posted.

61.     Indeed, as was the usual practice, the flyer for the ADC position was never posted
internally for HRA employees, only publicly, where it was less likely to be found by civil
servants searching for promotional opportunities.

62.     On October 21, 2022, Ramirez submitted her application for the ADC position.

63.     The ADC position required responsibility for supervising two divisions within the
Bureau of Revenue Development and Automation ("BRDA"), developing, automating and
managing complex revenue generating and risk avoidance projects, providing financial analysis
and technical support and conducting research.

64.     All the core listed tasks for the open ADC position were within Ramirez's skill set
and she was well-qualified for the position, having worked as Director in HRA's Finance office
for over 15 years, and performed exceptionally well.

65.     Yet, Ramirez was not even granted the courtesy of an interview by JEWRAM
following her application for the ADC position.

66.     Indeed, around the time that Ramirez applied for the ADC position, she was told
by a co-worker that JEWRAM had assisted Taylor with preparing and updating his resume used
for Taylor's application to the ADC Position.

- 9 -

*Ramirez is Denied Promotion in Favor of the Far Less Qualified Taylor*:

67.    On January 3, 2023, Ramirez learned for the first time, in a memorandum addressed to Finance staff by JEWRAM, that Taylor had been selected for the ADC position.

68.    In the January 3 memorandum, JEWRAM listed the alleged accomplishments of Taylor to include that Taylor had been responsible for developing Anti-Eviction and Homeless claims systems.

69.    To the contrary, responsibility for developing Anti-Eviction and Homeless claims systems had been done by Ramirez's staff, and credit for that work was taken away from Ramirez and her team and used by JEWRAM to bolster Taylor's credentials and supposed qualifications for the ADC position.

70.    JEWRAM also gave Taylor credit for Supplemental Nutrition Assistance Program and Medical Support Enforcement projects that had been developed long before he was hired by HRA.

71.    In reality, Taylor has no exceptional skills that qualify him for the ADC position.

72.    In contrast, Ramirez has over 25 years of experience as a manager and has been a Director for over 15 years, while Taylor has less than six years managerial experience.

73.    At all relevant times, Ramirez was involved with the development of almost every project in HRA's Finance office and has knowledge of all ongoing projects in the department, whereas Taylor has not developed any such project from scratch to Ramirez's knowledge.

74.    Ramirez is aware of several significant errors that have been made by Taylor while working for Tabitha Brown. As an example, before his promotion to the ADC position, Taylor incorrectly vetted data used to send Forms 1099 to landlords and sent the forms late,

potentially risking HRA getting sanctioned by the New York State Department of Taxation and Finance in 2019.

75.    Ramirez is also the most senior manager in the unit, while JEWRAM herself admitted to Ramirez and others that Taylor was young and still learning and that JEWRAM had to provide a lot of guidance to him, whereas Ramirez was self-sustaining and an excellent manager.

76.    Despite Ramirez's sterling and superior qualifications, HRA and JEWRAM promoted Taylor and passed Ramirez over with no justifiable cause.

77.    Given JEWRAM's comments about age and national origin and the fact that the flyer for the ADC Position was never even internally posted, Defendants denied Ramirez promotion to the ADC position because of age, national origin and other unlawful consideration because they already planned to give the job to Taylor, a much less qualified white, younger man.

_Ramirez has Suffered Physical and Emotional Distress_:

78.    Upon learning of Taylor's promotion and her being passed over, Ramirez developed severe stomach pain and abnormally rapid heart rate and vomited in the bathroom. When an employee asked Ramirez later if she was okay, Ramirez admitted that she felt like she was having a nervous breakdown.

79.    As a result, Ramirez immediately applied for FMLA leave, which JEWRAM informed the unit of on January 4, during a meeting to congratulate Taylor on his promotion.

80.    As a proximate result of Defendants' discriminatory conduct, Ramirez has suffered and continues to suffer significant monetary loss and damages, including the loss of past and future earnings, and other employment benefits.

81.    As a further proximate result of Defendants' actions, Ramirez has suffered emotional distress, lasting embarrassment, humiliation, and anguish, as well as other incidental and consequential damages and expenses.

82.    Defendants' conduct was outrageous and malicious, intended to injure Ramirez, and carried out with reckless indifference to Ramirez's protected civil rights, thereby entitling her to punitive damages.

83.    Ramirez has no complete, plain, clear, or adequate remedy at law.

84.    Defendants' actions were unlawful and in violation of Plaintiff's rights under federal laws, such as 42 U.S.C. § 1981, Title VII, and ADEA, and state and local laws, such as the New York City Human Rights Law and New York State Human Rights Law, and New York Civil Service Laws.

## FIRST COUNT AGAINST DEFENDANT CITY
### (Discrimination Pursuant to Title VII)

85.    Ramirez repeats and realleges each allegation in each paragraph above.

86.    Defendant City subjected Ramirez to differential terms and conditions of employment because of her race, color and national origin.

87.    These differential terms and conditions of employment include, but are not limited to:

   a.  Making discriminatory comments about individuals of Guyanese national origin;

     b.   Excluding Ramirez from meetings; and

     c.   Denying Ramirez promotion to the ADC position in favor of a white male.

88.    By reason of the foregoing, Ramirez suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## SECOND COUNT AGAINST ALL DEFENDANTS
### (Race Discrimination under Sections 1981 and 1983)

89.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

90.    Defendants subjected Plaintiff to differential terms and conditions of employment because of her race.

91.    Specifically, Plaintiff was denied promotion to the ADC position because of her race.

92.    Defendants took the foregoing actions in order to deprive Plaintiff of equal employment opportunities and other contractual opportunities on account of her race.

93.    Because of Defendants' willful and deliberate actions, and as a proximate cause thereof, Plaintiff has been denied her right to equal employment opportunity in violation of Sections 1981 and 1983.

94.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## THIRD COUNT AGAINST THE CITY
### (Age Discrimination under the ADEA, 29 U.S.C. § 626(b))

95.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

96.    Ramirez was born in 1963 and is currently 60 years of age.

- 13 -

97.     Ramirez was treated differently on account of her age, including by being denied promotion to the ADC position in favor of a younger male in his late 30s/early 40s.

98.     The foregoing acts of the CITY constitute unlawful discrimination in violation of the ADEA.

99.     The City's violation of the ADEA was willful.

100.    Ramirez exhausted her administrative remedies under the ADEA before commencing this action.

101.    By reason of the foregoing, Ramirez suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### FOURTH COUNT AGAINST ALL DEFENDANTS
**(Age and National Origin Discrimination in Violation of the NYSHRL)**

102.    Ramirez repeats and realleges each allegation in each paragraph above.

103.    At all relevant times, Ramirez was an "employee" within the meaning of the NYSHRL.

104.    By adversely affecting the terms, conditions, and privileges of Ramirez's employment because of her age and national origin, Defendants violated the NYSHRL.

105.    By reason of the foregoing, Ramirez has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### FIFTH COUNT AGAINST ALL DEFENDANTS
**(Age and National Origin Discrimination in Violation of the NYCHRL)**

106.    Ramirez repeats and realleges each allegation in each paragraph above.

107.    At all relevant times, Ramirez was an "employee" within the meaning of the NYCHRL.

108.    By adversely affecting the terms, conditions, and privileges of Ramirez's employment because of her age and national origin, Defendants violated the NYCHRL.

109.    By reason of the foregoing, Ramirez has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## PUNITIVE DAMAGES

110.    Ramirez claims punitive damages by reason of the wanton, unrepentant, reckless and egregious conduct of the individual Defendant alleged.

**WHEREFORE,** Plaintiff prays that this Court grant her judgment containing the following relief:

a.    Impanel a jury to hear Ramirez's claims;

b.    An award of damages in an amount to be determined upon the trial of this matter to compensate Ramirez for her monetary loss and damages, including Ramirez's loss of past and future earnings, bonuses, compensation, and other employment benefits;

c.    An award of damages to compensate Ramirez for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

d.    An award of damages in an amount to be determined at trial to compensate Ramirez for violations of her rights under Sections 1981 and 1983, Title VII, ADEA, the NYSHRL and the NYCHRL;

e.    An award of punitive damages to be determined at the time of trial for the claims under Sections 1981 and 1983, Title VII, ADEA, the NYSHRL and the NYCHRL;

    f.      An award of reasonable attorneys' fees and costs related to Ramirez's claims under Sections 1981 and 1983, Title VII, ADEA, the NYSHRL and the NYCHRL; and

    g.      Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       February 13, 2024

                         Respectfully Submitted,

                         _____

                         SAMUEL O. MADUEGBUNA, ESQ.
                         **MADUEGBUNA COOPER LLP**
                         Attorneys for Plaintiff,
                         SALLY RAMIREZ
                         30 Wall Street, 8th Floor
                         New York, NY 10005
                         (212) 232-0155

TO:    Defendants

       THE CITY OF NEW YORK
       c/o Corporation Counsel
       Law Department
       100 Church Street
       New York, New York 10007

       S. DEVI JEWRAM
       c/o New York City Human Resources Administration
       150 Greenwich Street
       New York, New York 10007

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*                    *Docket No.:*
-------------------------------------------------------------------------------------------------------
*SALLY RAMIREZ,*

*Plaintiff,*

*-against-*

*CITY OF NEW YORK, S. DEVI JEWRAM, and JOHN and JANE DOE (said names being fictitious, the persons intended being those who aided and abetted the unlawful conduct of the named Defendants),*

*Defendants.*
-------------------------------------------------------------------------------------------------------

*COMPLAINT AND JURY DEMAND*

-------------------------------------------------------------------------------------------------------
*Signature (Rule 130-1.1-a)*

*Print name beneath*
*SAMUEL O. MADUEGBUNA, ESQ.*

*Yours, etc.*

*MADUEGBUNA COOPER LLP*
*Attorneys for Plaintiff*
*30 Wall Street, 8th Floor*
*New York, New York 10005*
*(212) 232- 0155*

*To: All Counsel of Record*

*Service of the within is hereby admitted on*

*Attorneys for*