UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SALLY RAMIREZ,

                Plaintiff,

-against-

CITY OF NEW YORK et al.,

                Defendants.

24-cv-1061 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Plaintiff Sally Ramirez has worked for the Human Resources Administration/Department of Social Services (HRA), a New York City agency, for over 30 years. Compl. ¶¶ 2–3, Dkt. 1. Ramirez is a 60-year-old Guyanese woman of Indian descent, and she says she was passed over for a promotion based on her age and race. ¶ 3.

Until June 2022, Defendant S. Devi Jewram was the Assistant Deputy Commissioner of Finance in HRA's Office of Revenue Management and Development (ORMD). ¶ 16. From 2018 until June 2022, Jewram was Ramirez's supervisor. ¶ 19.

Ramirez says that during that time, Jewram made comments about older staff in HRA's finance office not retiring, that Ramirez would be working when Jewram retires because Ramirez was on an age-62 retirement plan whereas Jewram was on an age-57 plan, and that staff should leave if they were unhappy because "there were no opportunities to progress." ¶¶ 45–49. During an interview of an older candidate, Jewram allegedly told Ramirez that the candidate was at retirement age and might leave at any time. ¶¶ 53–55. When Ramirez said she wanted to hire the candidate, Jewram objected saying that he was old. ¶¶ 56–57. Ramirez also says that Jewram (who is also Guyanese) made a comment in 2022 that Jewram would not return to Guyana after retirement because she did not like Guyana or Guyanese people. ¶ 51. Jewram also allegedly said she was glad her son did not live with a Guyanese woman and that speaking to a "smart" Guyanese doctor made her change her mind about Guyanese people. ¶ 52.

In October 2022, Ramirez found a job posting for Assistant Deputy Commissioner (ADC) of the Bureau of Revenue Development and Automation in HRA's citywide personnel system. ¶ 60. She says that the position had been posted publicly, but not internally for HRA employees, a common practice that made the job posting "less likely to be found by civil servants searching for promotional opportunities." ¶ 61. She submitted her application for the position. ¶ 62. But despite being qualified, Ramirez said that she "was not even granted the courtesy of an interview" by Jewram. ¶ 65.

Instead, Darshan Taylor (a white employee in his late 30s or early 40s who joined HRA in 2013) was selected for the role. ¶¶ 39, 67. Ramirez was told by a co-worker that Jewram had helped Taylor prepare and update the résumé he used to apply for the position. ¶ 66. Ramirez also says that Jewram circulated a memorandum announcing Taylor's new role that incorrectly credited him for developing the Anti-Eviction and Homeless claims systems (which Ramirez says her team was responsible for) and the Supplemental Nutrition Assistance Program and Medical Support Enforcement projects (which were allegedly developed before Taylor was hired at HRA). ¶¶ 67–70. Ramirez claims that she was far more qualified than Taylor for the position. ¶¶ 71–76.

Ramirez says that she had a nervous breakdown after she learned Taylor was promoted and had to apply for FMLA leave. ¶¶ 78–79. Ramirez sued her employer and Jewram, alleging discrimination on the basis of age, race, and national origin.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In deciding a motion to dismiss, well-pleaded factual allegations are accepted as true, and all reasonable inferences are drawn in the non-movant's favor. *Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022). While detailed factual allegations are not necessary, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

### I. Title VII Claim

Title VII requires plaintiffs to exhaust available administrative remedies by filing a timely complaint with the EEOC, obtaining a right-to-sue letter, and filing suit within ninety days of the receipt of that letter. 42 U.S.C. § 2000e–5(e)–(f). In her complaint, Ramirez alleged that "[t]he EEOC issued a Right to Sue Notice to Ramirez on November 15, 2023, which she received on November 15, 2023." Compl. ¶ 10. Defendants say that Ramirez's Title VII claim should be dismissed because Ramirez did not attach the right-to-sue letter to her complaint. Since Ramirez attached her letter as an exhibit to her opposition brief, Defendants' motion to dismiss is denied on this basis. Defendants do not otherwise seek dismissal of this claim.

### II. Section 1981 Claim

Defendants next say that Ramirez's claim brought under 42 U.S.C. § 1981 should be dismissed because § 1981 does not provide a right of action against state actors. But as Ramirez's opposition makes clear, she has not brought a freestanding § 1981 claim. Instead, she has brought a claim under § 1983 to vindicate federal rights conferred by § 1981. This is permissible. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("Section 1983 is not itself a source of substantive rights. It merely provides a method for vindicating federal rights elsewhere conferred, such as those conferred by § 1981." (cleaned up)).

**III.   Section 1983 Claim Against the City**

Defendants also say that the Court should dismiss Ramirez's § 1983 claim against the City of New York because Ramirez has not adequately pled municipal liability. "'Local governing bodies like the City of New York can be sued directly' (1) when 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers' or (2) for 'constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *Bernshtein v. City of New York*, 496 F. App'x 140, 144 (2d Cir. 2012) (cleaned up) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Defendants say that Ramirez has not alleged "that Jewram was acting pursuant to any policy, custom, or practice at all." Dkt. 13 at 7.

Ramirez says that she is pursuing a final policymaker theory. "The Supreme Court has said that a municipality may be liable for the acts of a single official—but only if that official is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (quoting *Monell*, 436 U.S. at 694). This final-policymaker standard applies when the official was "sufficiently high up in the municipal hierarchy, that he was responsible under state law for making policy in that area of the municipality's business." *Id.* (cleaned up).

Ramirez says that Jewram is a final policymaker so her "decision to deny Ramirez an interview for the ADC position and then pass her over in favor of Taylor" can create municipal liability. Dkt. 22 at 15. But Ramirez does not allege that Jewram had responsibility under state law for making policy in any area of HRA business. *Id.* Nor does she identify any state law that would provide Jewram such authority. And—more fundamentally—the complaint does not suggest that Jewram even made a final decision that might be relevant in this case. The complaint says that "Ramirez was not even granted the courtesy of an interview by [Jewram] following her application for the ADC position." Compl. ¶ 65. While this suggests that Jewram could have granted Ramirez an interview, the complaint does not make clear whether Jewram played any other role in the hiring process. For example, there are no allegations that Jewram was responsible for posting job openings, interviewing candidates, or deciding who would be promoted. The complaint also says that Jewram helped Taylor update his résumé and sent out a memo announcing that Taylor was selected for the position. But neither allegation suggests that Jewram had a role in deciding who would get the promotion.

There is simply nothing in the complaint suggesting that Jewram was a final policymaker or (even assuming she was) that Jewram actually made the decision to promote Taylor over Ramirez. So the Court will dismiss Ramirez's § 1983 claim against the City. *See Kimble v. Kingston City Sch. Dist.*, 792 F. App'x 80, 82 (2d Cir. 2019) (affirming dismissal of municipal liability claim because "[b]ased on the lack of factual allegations in this complaint, the decision not to hire Kimble as a school security officer may have been made by low-level employees who removed his name for consideration just as plausibly as by a final policymaker"); *Schwab v. Smalls*, 435 F. App'x 37, 40 (2d Cir. 2011) (affirming dismissal of municipal liability claim because, "despite a vague

assertion that 'Smalls manifestly had the final discretionary decision making authority' … she has not adequately alleged that any of the individual defendants had 'final authority to establish municipal policy with respect to' the hiring and firing of District employees").

### IV. Claims against Jewram

Finally, Defendants say that Ramirez's claims against Jewram—brought under § 1983, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL)—should be dismissed. The Court agrees.

Ramirez has not adequately alleged a § 1983 claim against Jewram. Personal involvement of the defendant "is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). According to the complaint, the § 1983 claim is based on the allegation that Ramirez "was denied a promotion to the ADC position because of her race." Compl. ¶ 91. As explained above, Ramirez has not alleged that Jewram was personally involved in the decision not to promote Ramirez (allegedly because of her protected characteristics). The complaint indicates that Jewram potentially helped Taylor update his résumé, sent a memorandum announcing that Taylor was selected for the position, and did not "grant[]" Ramirez "the courtesy of an interview." Compl. ¶¶ 65–67. But there are no allegations that Jewram was involved in the promotion decision, which is what Ramirez's § 1983 claim is based on. For one thing, Jewram was no longer Ramirez's supervisor when Ramirez applied for the promotion. And there are no allegations that Jewram posted the job, interviewed candidates, made the initial decision on who to select for interviews, or made the decision of who to promote.[1] *Compare Oliphant v. Caldwell*, 212 F. Supp. 3d 480, 488 (S.D.N.Y. 2016) (denying summary judgment on § 1983 claim against individual defendant because "[b]oth times plaintiff was not promoted, [the defendant] was responsible for the ultimate decision on whom to promote"), *with Mallison v. Connecticut Off. of Early Childhood*, 634 F. Supp. 3d 21, 37 (D. Conn. 2022) (granting motion to dismiss § 1983 claim because the plaintiff "does not allege that [the defendant] participated in the decision regarding who to promote or that [the defendant] preferred [a white applicant] over him for any reason, let alone a prohibited one").

As explained below, it may be possible for Ramirez to salvage her claim simply by clarifying her allegations. For example, if Ramirez's allegation that Jewram did not "grant[]" her "the courtesy of an interview," Compl. ¶ 67, is meant to indicate that Jewram chose which candidates to interview, Ramirez should say so directly. Or if Jewram made the call of who to hire or had influence over that decision and pushed for Taylor to get the promotion over Ramirez based on Ramirez's age, race, or national origin, Ramirez should make that clear too. But as currently alleged, the Court cannot conclude that Jewram played any role in denying Ramirez a promotion based on her race.

---

[1] Ramirez does allege that "HRA and JEWRAM promoted Taylor and passed Ramirez over with no justifiable cause." Compl. ¶ 76. But this conclusory allegation does not provide any factual support that Jewram was personally involved in the promotion decision.

The NYCHRL and NYSHRL claims against Jewram also fail. To state a claim under the NYCHRL, a "plaintiff need only show differential treatment—that she is treated less well—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (footnote and internal quotation marks omitted). The NYSHRL standard is "close[] to the standard of the NYCHRL." *Mitura v. Finco Servs., Inc.*, 2024 WL 232323, at *4 n.4 (S.D.N.Y. Jan. 22, 2024) (citation omitted). A plaintiff must show that she was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership in one or more of the protected categories." *Id.* at *4 (cleaned up). The city law "provides for individual liability … if the individual defendant actually participated in the conduct giving rise to the claim." *Yu v. Shanghai Dumpling, Inc.*, 2023 WL 3728347, at *5 (S.D.N.Y. May 30, 2023). Under state law, individual liability may be imposed if the defendant "actually participated in the conduct giving rise to a discrimination claim" and either "has an ownership interest in the employer," "has the authority to hire or terminate its employees," or "aided and abetted the unlawful discriminatory acts of others." *Yu*, 2023 WL 3728347, at *5.

Ramirez alleges that she was excluded from meetings, but there are no allegations that Jewram participated in that behavior. Ramirez also says she was denied a promotion, but as explained above, Ramirez does not clearly allege whether Jewram played any role in deciding that Taylor would receive the promotion over Ramirez. Ramirez says that Jewram helped Taylor update his résumé and announced that he had been selected, but neither allegation implies that Jewram played a role in the promotion process.

Instead, according to the complaint, Jewram's personal involvement was limited to the following conduct:

- Making comments about older staff in HRA's finance office not retiring and about how Ramirez would be working when Jewram retires because Ramirez was on an age 62 retirement plan whereas Jewram was on an age 57 plan. Compl. ¶¶ 45–49.

- Telling Ramirez that a candidate was in retirement age and should not be hired because of his age. ¶¶ 53–55.

- Saying that she would not retire in Guyana because she did not like the country or Guyanese people, that she was glad her son did not live with a Guyanese woman, and that speaking to a "smart" Guyanese doctor made her change her mind about Guyanese people. ¶¶ 51, 52.

These comments are not sufficient to state a claim under either state or city law. The first set of comments—discussing the lack of retirement in the office or stating that Jewram would retire before Ramirez—do not appear discriminatory at all, even if Ramirez found them annoying. And the second set of comments was not related to Ramirez, but rather a candidate that Ramirez was hiring. Ramirez does not allege that Jewram ever did anything to link these comments to Ramirez. Nor does Ramirez allege facts that would allow the Court to draw such an inference.

The remaining comments—while certainly inappropriate and offensive—were not specifically targeted at Ramirez and are insufficient to give rise to liability under the circumstances alleged

here. *Tortorici v. Bus-Tev, LLC*, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021) ("Isolated incidents of unwelcome verbal and physical conduct have been found to constitute the type of petty slights and trivial inconveniences that are not actionable, even under the more liberal NYCHRL standard."); *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 64 (1st Dep't 2009) (comments made in female employee's presence that we not directed at her did not support a harassment claim). Plus, Ramirez has not alleged anything at all about the context or frequency of these comments.

Moreover, Ramirez has not sufficiently alleged that Jewram treated Ramirez differently because of any protected status and the Court is unable to infer from these comments that Jewram was doing so. *See Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022) (dismissing NYCHRL hostile work environment claim because plaintiff "fails to allege either direct or comparator evidence that would support a finding of differential treatment").

When viewed in their totality, this "handful of comments … fall far short" of creating liability under the NYCHRL or NYSHRL. *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 580 (S.D.N.Y. 2023). To be clear, under the NYCHRL, "even a single comment may be actionable in the proper context." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013). But Ramirez has not included any allegations about the context here that would make liability appropriate, even under the NYCHRL's more liberal standard.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. As for the dismissed claims, Ramirez has until September 6, 2024, to file an amended complaint. If she does, Ramirez should clarify Jewram's role in the promotion process (*i.e.*, whether Jewram selected candidates for interview or had an influence over who to promote), whether Jewram excluded Ramirez from meetings, and the context and frequency of Jewram's alleged statements. Ramirez should also clarify whether she is arguing that Jewram helped Taylor with his application in a manner that was motivated by discrimination or constituted differential treatment towards Ramirez and the factual basis for these allegations.

The Clerk of Court is directed to terminate Dkt. 11.

SO ORDERED.

Dated: August 22, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge