UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Sally Ramirez,<br><br>                              Plaintiff,<br><br>          -against-<br><br>City of New York; S. Devi Jewram; Darshan Taylor; John and Jane Doe,<br><br>                              Defendants. | 24-cv-1061 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Sally Ramirez has sued her employer (the City of New York) as well as some of her supervisors. She alleges a hostile work environment; discrimination on the basis of race, age, disability, and national origin; and retaliation under a mix of federal and state laws. The defendants have moved for partial summary judgment on a subset of those claims. For the reasons below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

Ramirez worked for the City of New York in its Department of Social Services (DSS). Dkt. 94 ¶¶ 6, 9. From June 2018 to June 2022, Ramirez was supervised by Devi Jewram. Dkt. 94 ¶ 89. Jewram, like Ramirez, is Guyanese and of Indian descent. *Id.* ¶¶ 3–4, 16. Jewram allegedly made comments at work about Guyanese people. As Ramirez tells it, Jewram said that she "has a disdain for Guyana," "dislikes Guyanese people," "believes Guyanese people are illiterate," "finally met an intelligent Guyanese doctor," "is happy her son is not living with a Guyanese woman," and "didn't believe that another Guyanese employee … was qualified." *Id.* ¶ 19. And she allegedly said that she "wanted to fill the department with new and younger people," and commented that coworkers who were in their 70s "needed to retire." *Id.* ¶ 21.

In 2022, Jewram's job opened up when she was promoted from Assistant Deputy Commissioner to Deputy Commissioner. *Id.* ¶ 96. Ramirez saw the job posting online and applied. *Id.* ¶¶ 33, 117. She didn't get the job, or even an interview. It instead went to Darshan Taylor, a fifty-year-old white man. *Id.* ¶¶ 28, 48, 199–200. Taylor then became Ramirez's boss. *Id.* ¶ 212. When Ramirez learned this, she "got very ill," and "applied for an FMLA leave from January to April" 2023. Dkts. 89-1 at 18:22–19:1, 26:15–20; 94 ¶ 217. She believed that her illness was caused by the stress of being treated unfairly and passed up for the promotion. Dkt. 89-15 at 2.

Soon enough, it was April and Ramirez's FMLA leave was coming to a close. She requested and received an accommodation to work from home based on a letter from her doctor. Dkt. 94 ¶¶ 222–23. She said that she had anxiety, osteoporosis, and postherpetic neuralgia, all of which

would be alleviated by telework. *Id.* ¶ 50. Ramirez's work-from-home arrangement was extended multiple times. Dkts. 95-49, 95-50, 95-51; 95-53. In response to a couple of these requests, Taylor noted that "Ramirez has been working remotely … and continues to manage her staff's work assignments in a timely manner." Dkt. 95-50, 52. The upshot is that Ramirez's accommodation was in place until at least July 2024.

In the meantime, Ramirez sued Jewram, Taylor, and the City under a mix of federal and state laws in February 2024. Dkt. 1. She alleged that Jewram had subjected her to differential terms of employment (because she's Guyanese), and that Taylor was promoted over her (because he's younger and white while she's older and Guyanese). That's this suit.

While this suit was pending, Ramirez's accommodation was set to expire. She requested another extension. Dkt. 94 ¶ 50. Unlike as with Ramirez's prior requests, this time Taylor recommended that DSS deny it. He wrote that granting the request "would create an undue burden" because "Ramirez is responsible for supervising 5 staff" and Taylor had "become the de facto manager of her staff's immediate needs … during the three days [per week he was] in the office." Dkt 89-11 at 2. Though previously he "was able to assist Ms. Ramirez," given his "day-to-day responsibilities … it [was] not sustainable to continue to train and manage her staff's work assignments indefinitely." *Id.* The email had a bullet-pointed list with seven examples of when Taylor had to take up Ramirez's responsibilities for her over the prior two years. *Id.*

DSS denied the extension request. It explained that the accommodation would "not allow [Ramirez] to perform all the essential job duties" in her role. Dkt. 89-12 at 5. She appealed the determination and that appeal was denied by the DSS Reasonable Accommodations Appeal Panel. Dkt. 89-13. The panel then reached out to her. Dkt. 89-14. While it continued to stand by its decision that Ramirez's "lack of presence in the office … has created both operational and staffing disruption/deficiencies," it wanted to "work with [her] to identify how it can best accommodate [her] stated medical limitations to assist [her] in the performance of [her] job duties." *Id.* at 2.

The next day, Ramirez amended her complaint to add retaliation claims. Dkt. 57. And three days after that, she resigned and retired, citing the "profound humiliation and embarrassment that have made it impossible for [her] to continue working." Dkt. 89-15. The defendants filed an answer and have moved for partial summary judgment. Dkts. 64, 88. In response, Ramirez has withdrawn her NYSHRL and NYCHRL claims against Taylor (though she maintains them against Jewram and the City). Dkt. 96 at 12.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden

of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## DISCUSSION

Because Ramirez has withdrawn her state-law claims against Taylor, defendants' motion for partial summary judgment is on only two sets of claims. The first includes the federal claims against Jewram, which defendants argue can't be made under § 1981. The second includes Ramirez's disability-discrimination and retaliation claims brought under the Rehabilitation Act. For the reasons below, the Court grants summary judgment to defendants on the disability-discrimination claims under the Rehabilitation Act and denies summary judgment on all other claims.

### I.    Ramirez's claims are properly brought pursuant to § 1983

Defendants argue that Ramirez is improperly bringing a claim against Jewram pursuant to § 1981. 42 U.S.C. § 1981. They say Ramirez can't bring this claim because § 1981 "does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018). That's true, but neither Ramirez nor the Court construes her complaint as raising a standalone § 1981 cause of action. Instead, she is bringing a § 1983 action predicated on alleged violations of the rights that she enjoys under § 1981. Dkt. 57 ¶¶ 164–69. That's proper. In fact, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).

### II.    There's a genuine dispute of material fact about retaliation, but not about discrimination

Ramirez's claims under the Rehabilitation Act turn on two theories. First, that the City discriminated against her based on her disability by denying her request to extend her accommodations. Second, that the City retaliated against her for complaining about disability discrimination by denying her request and ultimately forcing her to resign.

#### A.  Ramirez's disability-discrimination claims stop here

"Disability discrimination claims under the Rehabilitation Act are analyzed under the same standard used for ADA discrimination claims." *Conklin v. ICE*, 661 F. Supp. 3d 239, 258 (S.D.N.Y. 2023) (quoting *Pilligan v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (cleaned up). That means Ramirez must show that: (1) her employer is subject to the Rehabilitation Act; (2) she is disabled as defined in the Act; (3) she was "otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation"; and (4) she "suffered adverse employment action because of [her] disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). As to the third prong, Ramirez "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009).

Defendants don't contest prongs (1), (2), or (3)—they instead argue that failure to provide a reasonable accommodation isn't itself an adverse employment action. Dkt. 90 at 15. That's correct in the narrow context raised here: disability-discrimination claims. *Felix v. New York City Dep't of Educ.*, 2023 WL 4706097, at *7 (S.D.N.Y. Jul. 24, 2023) ("[T]he failure to provide a reasonable accommodation in and of itself does not equate to an adverse employment action, though it can be the basis for a separate failure to accommodate claim." (internal citation omitted)). Though Ramirez points to cases that she says stand for the opposite proposition, these cases don't address the context of disability discrimination, but instead *retaliation*. *See Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002) (discussing retaliation claims); *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 460 (S.D.N.Y. 2023) ("[D]enials of accommodations can constitute adverse actions in the retaliation context.").

This distinction is sensible. There are other statutory routes to challenge the denial of accommodations, for example by bringing a failure-to-accommodate claim. In fact, Ramirez's claim sounds more in a failure to accommodate than disability discrimination. Transferring it into the discrimination context runs headlong into an obstacle: A discrimination claim on the basis of disability must allege that the discrimination happened *because of* the plaintiff's disability. *Woolf*, 949 F.3d at 93. No facts in the record suggest that Ramirez was told to return to work *because* she is disabled.

That's also why Ramirez's alternative theory of constructive discharge fails. Her view is that the denial of her accommodations wasn't just itself an adverse employment action but also amounted to a *constructive discharge*. Dkt. 57 ¶ 182. "A constructive discharge constitutes an adverse employment action." *Nazon v. Time Equities, Inc.*, 2022 WL 18959570, at *15 (S.D.N.Y. Nov. 22, 2022) (in the context of Title VII) (internal quotations omitted); *see also Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 324 (S.D.N.Y. 2024) ("'Adverse employment action' has the same meaning under the ADA as it does under Title VII."); *Quadir v. N.Y.S. Dep't of Labor*, 39 F. Supp. 3d. 528, 537 (S.D.N.Y. 2014) ("[T]he Rehabilitation Act imports the discrimination standards of Title I of the ADA and the retaliation standards of Title V."). The question, then, is whether denying Ramirez's accommodations added up to constructive discharge.

It didn't. Though her briefing is a bit vague, Ramirez appears to offer two theories of constructive discharge. The first is that, by passing her over for the promotion late in her career, the City essentially nixed what was left of it. Dkt. 96 at 20. Her second is that that the denial of accommodations that she needed was *itself* a constructive discharge. The first theory fails because the timeline doesn't make sense—she alleges that she was constructively discharged on the basis of a disability that developed as a result of the constructive discharge. And the second theory fails for the familiar reason that showing an adverse employment action isn't enough; Ramirez must show that the action was *because of her disability*. *Woolf*, 949 F.3d at 93. She makes no such showing.

Instead, the record reflects efforts made by defendants to continue to accommodate Ramirez's disability. After the appeals panel denied Ramirez's request for an extension, it offered her some alternative accommodations. Those included extending her work from home arrangement from two days a week (the standard contract) to three days a week, meaning that she'd have to come in

only twice a week. Dkt. 89-14. Then, for those two days, the panel offered additional accommodations. These included additional breaks, ergonomic equipment, and the use of Access-A-Ride buses to help with her commute. *Id.* Ramirez didn't take the City up on any of these or even reply. She instead immediately resigned.

That behavior strikes a contrast with the cases that Ramirez cites in which summary judgment was inappropriate for defendants on constructive discharge. In one, the plaintiff claimed that he was told by his employer that he'd be fired after a probationary period, regardless of his performance. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987). In the other, the plaintiff was stripped of all duties and responsibilities and cut off from communications for corporate officers. *Halbrook v. Reichhold Chems., Inc.*, 735 F. Supp. 121, 123 (S.D.N.Y. 1990). Ramirez, by contrast, was told she needed to return to the office *in order* to carry out the duties of her job.

### B. Ramirez's retaliation claims can proceed to trial

Ramirez's retaliation claims find firmer ground. The test for retaliation under the Rehabilitation Act has four parts: (1) the plaintiff was "engaged in protected activity," (2) "the alleged retaliator knew that the plaintiff was involved in protected activity," (3) "an adverse decision or course of action was taken against plaintiff," and (4) "a causal connection exists between the protected activity and the adverse action." *Hatch v. Brennan*, 792 F. Appx. 875, 879 (2d Cir. 2019) (internal quotations omitted). Summary judgment isn't warranted for defendants on any of these elements.

*First*, Ramirez isn't clear what protected activity she was engaged in, but the Court construes her complaint as referring to the general act of bringing litigation. Defendants don't contest that Ramirez suing them is protected activity but instead point out that Ramirez's complaint and briefing don't identify the protected activity precisely. That point is well taken. Ramirez identifies four actions: (1) the Court's denial of defendants' first motion to dismiss (August 22, 2024), (2) Ramirez's filing of her amended complaint (September 6, 2024), (3) defendants' filing of their second motion to dismiss (September 20, 2024), and (4) the Court's denial of that motion (December 19, 2024). Of course, only *one* of these is Ramirez's own action—filing the complaint. But that action is nonetheless protected.

*Second*, defendants have waived any argument that they didn't know that Ramirez was suing them. Their initial summary judgment brief doesn't mention this at all. It isn't until their reply brief that they contest it. "It is well-settled, however, that an argument raised for the first time in a reply brief is waived." *Ctr. for Indep. of Disabled, N.Y. v. MTA*, 2023 WL 5744408, at *6 (S.D.N.Y. Sept. 6, 2023) (citing *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)); *accord Conn. Bar Ass'n. v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived.").

*Third*, defendants cannot argue that denying Ramirez's accommodation isn't an adverse action. Unlike as in the discrimination context, "denials of accommodations can constitute adverse actions in the retaliation context." *Kirkland-Hudson*, 665 F. Supp. 3d at 460.

*Fourth*, there's a genuine dispute of material fact about whether the denial of accommodations was causally connected to Ramirez's lawsuit. Defendants argue that three months had passed between when she filed her amended complaint in September and when her request for accommodations was denied in December. Of course, "[c]lose temporal proximity … may in itself be sufficient to establish the requisite causal connection," *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010), but the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *see Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 555 (2d Cir. 2001) (finding that five months isn't too long). Here, the December denial of Ramirez's request for an extension was the first time in the record that Ramirez had asked for an extension since filing her suit.[1] When Ramirez previously asked for an extension before suing, Taylor not only endorsed it but wrote that there weren't any problems with her work. It was only after the lawsuit that his story changed. Suddenly there were lots of problems with Ramirez dropping the ball because of working from home. A jury could find that the denial was caused by her bringing and maintaining her suit. Of course, Taylor says he didn't know anything about the lawsuit. Dkt. 89-3 at 187:22–188:9. But that's a question of credibility for the jury to decide.

### CONCLUSION

The Court GRANTS summary judgment to defendants on Ramirez's disability-discrimination claims under the Rehabilitation Act, but otherwise DENIES defendants' motion. The parties should meet and confer and, by January 16, 2026, propose three separate weeks for a trial of this case in May through July 2026.

The Clerk of Court is directed to terminate Dkt. 88.

SO ORDERED.

Dated: January 2, 2026
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge

---

[1] There is a gap in the record that goes unaddressed by the parties. Ramirez's accommodation to work from home was set to expire in July, but she waited until November to renew it. It isn't clear why this was the case, but the Court can't make any inferences against the non-moving party from this omission.